## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TROY LILLIE, et al,** | * **CIVIL ACTION NO. 3:13-cv-00150** |
| | * |
| | * |
| **Plaintiffs,** | * |
| | * |
| **VERSUS** | * **JUDGE Brian A. Jackson** |
| | * |
| **STANFORD TRUST COMPANY, et al.,** | * |
| | * |
| **Defendants.** | * **MAGISTRATE Erin Wilder-Doomes** |
| | * |
| | * |
| **ROBERT C. AHDERS,** | * |
| | * **CIVIL ACTION NO. 3:16-cv-00801** |
| **Plaintiffs,** | * |
| | * **JUDGE Brian A. Jackson** |
| **VERSUS** | * |
| | * |
| **SEI PRIVATE TRUST COMPANY, et al.,** | * |
| | * **MAGISTRATE Erin Wilder-Doomes** |
| **Defendants.** | * |
| | * |

**********************************************

### SEI INVESTMENTS COMPANY AND SEI PRIVATE TRUST COMPANY'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A STATUS CONFERENCE

This litigation has recently returned to this Court after more than five years in multidistrict litigation proceedings in the Northern District of Texas (following more than three and a half years in state court). Defendants SEI Investments Company and SEI Private Trust Company (collectively, "SEI") submit this memorandum in support of SEI's request for a status conference to provide the Court with an overview of the procedural history and pending motions and to assist the Court in considering how best to manage this litigation on remand.

### A.    Summary of Procedural History

Filed in Louisiana state court in 2009, the *Lillie* action was originally brought against the Stanford Trust Company ("Stanford Trust"), Louisiana's Office of Financial Institutions, and

SEI.  Plaintiffs allege they invested in Certificates of Deposit ("CDs") that Stanford International Bank, Ltd. ("SIBL") issued as part of a Ponzi scheme perpetrated by R. Allen Stanford and his affiliated companies.  After the Stanford entities went into receivership, the *Lillie* Plaintiffs voluntarily dismissed Stanford Trust.  The state court eventually granted class certification.  While the matter was on appeal, Plaintiffs amended the state court petition in *Lillie* to name seven insurers of SEI as additional Defendants.  The insurers then removed the case to this Court.  After removal, the Judicial Panel on Multi-District Litigation severed Plaintiffs' claims against Louisiana's Office of Financial Institutions and transferred the remainder of the action to the MDL court.

After the court-approved notice was sent to the class, certain opt-outs from that class filed the *Ahders* case.  The *Ahders* complaint is virtually identical to the allegations in *Lillie* and has generally been following the *Lillie* action.

### B.    The Remaining Claim and Pending Fully Briefed Summary Judgment Motion

As a result of motion-to-dismiss proceedings in Texas, the MDL court dismissed all claims that would seek to hold SEI primarily liable.  *Lillie v. Stanford Trust Co.*, No. 3:13-cv-3127-N, 2015 WL 13741932, at *2-3 (N.D. Tex. Sept. 22, 2015) (attached as Exhibit A); *Ahders v. SEI Private Trust Co.*, No. 3:17-cv-52-N-BQ, Dkt. 49 (N.D. Tex. Mar. 31, 2017) ("*Ahders* Dismissal Order") (attached as Exhibit B).  All that remains of Plaintiffs' claims against SEI and its insurers is a single claim seeking to hold SEI secondarily liable under the control-person provision of the Louisiana Securities Law, La. Rev. Stat. § 51:714(B).  That provision requires the allegedly secondarily liability to actually ***control*** the primarily liable party and states, in relevant part:

> Every person who directly or indirectly ***controls*** a person liable
> under Subsection A of this Section [*i.e.*, the primary liability

> provision], . . . is liable jointly and severally with and to the same
> extent as the person liable under Subsection A of this Section
> unless the person whose liability arises under this Subsection
> sustains the burden of proof that he did not know and in the
> exercise of reasonable care could not have known of the existence
> of the facts by reason of which liability is alleged to exist.

*Id.* (emphasis added). With respect to primary liability, "Section 712(A) makes it unlawful for a *seller* [of covered securities] to make a material misstatement or omission" in connection with the offer or sale of securities. *Heck v. Triche*, 775 F.3d 265, 282 (5th Cir. 2014) (citing La. Rev. Stat. § 51:712(A)).

Under the language of the control-person provision, as interpreted by the Fifth Circuit, Plaintiffs' control-person claim requires proof that Stanford Trust was primarily liable to Plaintiffs and that SEI had control over Stanford Trust with respect to "the specific transaction or activity" upon which the primary violation is based. *Lillie v. Stanford Trust Co.*, No. 3:13-cv-3127-N, 2016 WL 10591374, at *6 (N.D. Tex. May 2, 2016) (order adopting the state court's class certification order) (attached as Exhibit C); *Heck*, 775 F.3d at 283.

In September 2018, SEI filed a motion for summary judgment in *Lillie* at the invitation of MDL Judge Godbey. The undisputed evidence shows that SEI did not control Stanford Trust or any Stanford entity, let alone in connection with the specific acts that give rise to Stanford Trust's alleged primary liability. Moreover, it is clear that Plaintiffs do not even intend to prove actual control by SEI over a primarily liable actor. Instead, in their summary judgment opposition and separate "motion to dismiss" the summary judgment motion, Plaintiffs make plain that they hope to be able to prove that SEI "enabled" or "failed to prevent" the fraud. Plaintiffs' theories and evidence falls well short of the legal standard for control as a matter of law, and summary judgment should be granted.[1]

---

[1] A copy of the docket sheets in *Lillie* and *Ahders* are attached for the Court's convenience as Exhibits D and E.

C.    **Factual Background**

The underlying fraudulent scheme here was orchestrated and executed by R. Allen

Stanford and his various Stanford-affiliated companies.  "Through his corporations, Stanford

represented to prospective investors that their funds would be reinvested in high-quality

securities so as to yield the investors the high rates of return purportedly guaranteed by the CDs."

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188 (5th Cir. 2013).  It

would appear that Stanford was mostly using new investments to repay earlier investors and

enrich himself.  *See id.*  Stanford and his chief financial officer were prosecuted and convicted of

federal crimes by the U.S. Department of Justice ("DOJ").  *Id.* at 189.  He and his companies

were charged and found liable for civil violations of the federal securities laws by the Securities

and Exchange Commission ("SEC").  *Id.*  A receiver was appointed to preserve the Stanford

companies' resources and pursue any Stanford assets that had been fraudulently conveyed to

third parties.  *Id.*  As a result of these proceedings, Stanford and his companies have been

ordered to repay $6 billion, and Stanford is serving a 110-year prison sentence.  *Chadbourne &*

*Parke LLP v. Troice*, 571 U.S. 377, 384-85, 394 (2014).[2]

The evidence shows that SEI's relationship with Stanford Trust in connection with the

SIBL CDs arose from a contract.  *See* SEI MSJ Mem. 8-18.  Under the terms of that contract,

SEI acted as an outside vendor for Stanford Trust.  *Id.* at 9-10.  As it did for many dozens of

other large and small bank clients, SEI furnished its software-based trust accounting system,

"Trust 3000," to Stanford Trust along with associated standard services.  *Id.*  The Trust 3000

system enables banks and trust companies like Stanford Trust to maintain internal recordkeeping

for their trust customers and to reflect different kinds of assets—including publicly-traded

---

[2] Although it is clear that Stanford and certain of his companies committed fraud, whether Stanford Trust has committed a primary violation of the Louisiana Securities Law remains unresolved.

securities and assets without readily determinable values, such as art, real estate, and CDs—in a single bank statement. *Id.* at 11. In Stanford Trust's case, Stanford Trust would identify specific customers and identify particular assets held by those customers; Trust 3000 would automatically update the value of publicly-traded securities; Stanford Trust would either update or provide SEI with the value of other assets, including the CDs, at the close of a month; and Trust 3000 would transmit this account information to a third-party printing company that then prepared and delivered Stanford Trust statements to Stanford Trust's end clients. *Id.* at 16. In return for providing Trust 3000, SEI received a modest fixed fee based on the number of Stanford Trust accounts. *Id.* at 17-18.

Far from granting SEI any control over Stanford Trust—much less in connection with SIBL CDs—the contract established that the parties had the opposite sort of relationship. ***Stanford Trust*** had authority to issue instructions to ***SEI***, and ***Stanford Trust*** bore responsibility for pricing the SIBL CDs and for statement review and distribution. *Id.* at 10. SEI did not have any input—let alone control—in relation to the CDs' marketing or valuation. *Id.* at 10-15. The contract expressly distinguished between marketable securities, whose values SEI was responsible for obtaining from widely available pricing reports, and non-marketable securities "including . . . CDs," which Stanford Trust had responsibility for valuing and updating. *Id.* at 11-12. SEI also lacked any sort of ownership interest in Stanford Trust or any representation on Stanford Trust's board of directors as a typical "control person" might have. *Id.* at 8-9.

Further confirming a lack of control by SEI, although the Stanford Ponzi scheme has been the subject of extensive investigations over the past ten years—by DOJ, the SEC, the court-appointed receiver, and others—none of these entities has ever alleged that SEI committed

5

wrongdoing in connection with the Stanford collapse, much less contend that SEI "controlled" any Stanford party.

### D.  <u>Status of Discovery</u>

In the nine years that the *Lillie* action has been pending, SEI has provided substantial discovery to Plaintiffs.  During the course of the state court proceedings, SEI produced thousands of pages of documents, responded to 43 interrogatories, and put forward two corporate designees whose depositions were taken by Plaintiffs.  Plaintiffs' state-court corporate deposition notice included 52 topics, including numerous topics on merits-related issues, many of which were addressed in those depositions.

Plaintiffs had further opportunities for discovery in the federal MDL proceedings.  SEI served its initial disclosures in June 2015, although Plaintiffs did not serve discovery requests until June 2018, three years later.  Plaintiffs served 134 interrogatories on SEI, and SEI responded in July 2018.  Later, on September 21, 2018, Plaintiffs took a Rule 30(b)(6) deposition of another SEI corporate designee, who testified that he spent 34 hours preparing to testify and met with 11 SEI employees in preparation for the 28 topics included in Plaintiffs' deposition notice.  In December 2018, SEI responded to 166 further requests for production of documents.  And just recently, SEI has produced over 32,000 documents representing nearly 137,000 pages.

### E.  <u>The Court Should Decide SEI's Pending Summary Judgment Motion</u>

Although Plaintiffs contend that SEI bears responsibility for the Stanford scheme, the law and undisputed facts refute Plaintiffs' contentions.  Applying the Fifth Circuit's holding in *Heck v. Triche*, the MDL court held that SEI cannot be primarily liable under the Louisiana Securities Law because it is not a "seller" of securities as required by the statute.  *Lillie*, 2015 WL

13741932, at *2-3 (citing *Heck*, 775 F.3d at 282); *see also Ahders* Dismissal Order, at 2.[3]  As a result, there remain no primary liability claims against SEI in this matter.

SEI's summary judgment filings explain why Plaintiffs' control-person claim for secondary liability also fails as a matter of law.  *See* SEI MSJ Mem.; SEI MSJ Reply.  In short, Louisiana law, like federal law, requires plaintiffs to establish that the defendant had ***actual control*** of the specific conduct that creates the primary actor's liability.  Under the statute's plain language, "control" has an expressly defined meaning:  "control" means "the power to direct" the primary violation.  La. Rev. Stat. § 51:702(4).  This definition, as article 9 of the Civil Code establishes, must "be applied as written and no further interpretation may be made in search of the intent of the legislature."  Consistent with the Fifth Circuit's teaching in *Heck*, applying that definition here requires granting SEI's motion for summary judgment.  The evidence is undisputed that the parties' relationship arose out of a contract, under which SEI unambiguously lacked any power to direct the alleged primary violations by Stanford Trust.

Plaintiffs' opposition to SEI's summary judgment motion does not contend that there is evidence that SEI had the ***power to direct*** any underlying fraudulent conduct.  Instead, Plaintiffs say they hope to prove that SEI allegedly ***enabled*** or ***failed to prevent*** the misconduct in its role as a vendor for Stanford Trust.  *Lillie*, N.D. Tex. Dkt. 261.  SEI's summary judgment briefs establish that courts have resoundingly rejected control-person claims premised on these more

---

[3] SEI recognizes that this Court is deeply familiar with the *Heck* case.  Although this Court and ultimately the Fifth Circuit upheld defendant Wayne Triche's liability under the Louisiana Securities Law, the Fifth Circuit emphasized that Triche was foreclosed from challenging the jury instructions on the control-person theory under the invited-error doctrine—because Triche had opposed separately instructing the jury on Louisiana's control-person provision—and found sufficient evidence that the fraudulent scheme depended on Triche's "instruction or approval."  *Heck*, 775 F.3d at 281, 285.  Unlike the trial court proceedings in *Heck*, the meaning and requirements for "control" are squarely before the Court.  Moreover, SEI's role in the present dispute bears no resemblance to Triche's role in *Heck* and, if anything, is more analogous to the role of defendant Daryl DeArmond, who provided some business consulting services and was granted judgment as a matter of law during the trial.  Transcript of June 9, 2011 Jury Trial Proceedings at 91-95, *Heck v. Buhler*, No. 3:07-cv-00021, Dkt. No. 221 (M.D. La. Apr. 4, 2014).

capacious concepts of enablement or failure to prevent.  As SEI's briefing explains, that is true both for courts applying the Louisiana Securities Law as well as for courts applying federal law in the specific factual context presented by this litigation, where a defendant provided administrative or ancillary services that were allegedly necessary for the execution of a Ponzi scheme.  SEI MSJ Mem. 21-23, 29-33; SEI MSJ Reply 4-7.

In an attempt to avoid the lack of legal or factual support for their claims, Plaintiffs filed what they have styled as a "motion for dismissal" of SEI's summary judgment motion.  This filing asserts in general terms that Plaintiffs need more of an opportunity to conduct discovery. *Lillie*, N.D. Tex. Dkt. 263.  But as SEI's opposition to that motion explains, Plaintiffs' request for more discovery does not satisfy the standards of Federal Rule of Civil Procedure 56(d), because it does not identify specific facts susceptible of collection in discovery that would create a genuine issue of material fact regarding the dispositive issue of control.  *Lillie*, N.D. Tex. Dkt. 269 ("SEI Opp.").  More importantly, as noted above, Plaintiffs do not assert that any additional discovery will enable them to establish control.  Instead, they seek discovery in the hope that they can prove some lesser theory that is inadequate as a matter of law.

Plaintiffs have already had ample opportunity for discovery.  Although this litigation has been ongoing for ten years, its lengthy duration is not the result of any unwillingness by SEI to fulfill its discovery obligations.[4]  Dating all the way back to the *Lillie* case's time in state court, SEI has diligently responded to voluminous discovery requests from Plaintiffs and provided substantial discovery.  Plaintiffs and SEI have collectively taken 21 depositions of parties and

---

[4] Much of this litigation's duration is attributable to the adjudication of threshold procedural issues.  Those include: the *Lillie* Plaintiffs' decision to amend their state court petition to add new Defendants, who then removed the case to federal court and thus prompted a motion to remand from Plaintiffs; questions about whether the federal securities laws preempt Plaintiffs' state-law claims, which ultimately led to appellate review and a decision by the United States Supreme Court in a companion case, *Troice*, 571 U.S. 377; and issues related to the propriety of class certification.

non-parties, over 100,000 pages of documents have been produced, and SEI has responded to 162 interrogatories.  SEI MSJ Mem. 5; *see also* SEI Opp. 6-20 (detailing SEI's good-faith participation in discovery).

SEI respectfully submits that resolving SEI's motion for summary judgment provides the most expedient way forward in this matter.  A review of the parties' papers, including Plaintiffs' misguided efforts to invoke Rule 56(d), shows that the remaining dispute in this litigation is a legal one, not a factual one.  The relevant authorities support granting SEI's motion for summary judgment because there is no genuine dispute of fact material to Plaintiffs' control-person claim. Plaintiffs' sole remaining theory fails as a matter of law, and so this Court should enter summary judgment in SEI's favor and bring this long-running litigation to a close.

Dated:  February 27, 2019                             Respectfully submitted,


**Of Counsel:**                                      */s/ Michael H. Rubin*
J. Gordon Cooney, Jr.                               Michael H. Rubin (10833)
Kenneth A. Polite, Jr. (33317)                      Juston M. O'Brien (26447)
Ryan P. McCarthy                                    McGlinchey Stafford PLLC
(Motion for Admission Pro Hac Vice pending)         301 Main Street, 14th Floor
Morgan, Lewis & Bockius LLP                          Baton Rouge, LA  70801
Philadelphia, PA  19103-2921                        Telephone:  (225) 383-9000
Telephone:  (215) 963-5000                          Facsimile:  (225) 343-3076
Facsimile:   (215) 963-5001                         mrubin@mcglinchey.com
                                                    jobrien@mcglinchey.com

## **CERTIFICATE OF SERVICE**

I certify that on this 27th day of February, 2019, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all known counsel of record by operation of the court's CM/ECF system.

*/s/ Michael H. Rubin*