# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TROY LILLIE ET AL. | CIVIL ACTION |
| VERSUS | |
| STANFORD TRUST CO. ET AL. | NO.: 13-150-BAJ-EWD |

*Consolidated With*

| | |
|---|---|
| TROY LILLIE ET AL. | CIVIL ACTION |
| VERSUS | |
| STANFORD TRUST CO. ET AL. | NO.: 19-138-BAJ-EWD |

## RULING AND ORDER

Before the Court are two motions: the **Motion for Summary Judgment (Doc. 127)** filed by SEI[1] and the **Motion for Dismissal of Summary Judgment or a Continuance (Doc. 130)** filed by Plaintiffs. For the reasons that follow, SEI's **Motion (Doc. 127)** is **GRANTED** and Plaintiffs' **Motion (Doc. 130)** is **DENIED**.

---

[1] The parties refer to SEI Investments Company and SEI Private Trust Company collectively as SEI. The Court does the same.

## I. BACKGROUND

At issue in this long-running litigation is SEI's liability under the control-person provision of the Louisiana Securities Law. *See* LA. REV. STAT. § 51:714(B). That liability turns on one question: Did SEI "control" Stanford Trust Company's primary violations of the Louisiana Securities Law? The undisputed facts show that it did not.

### A. The Scheme

This securities dispute arises from R. Allen Stanford's well-known Ponzi scheme. *See Janvey v. Brown*, 767 F.3d 430, 433–34 (5th Cir. 2014) (describing the scheme). Stanford sold fraudulent certificates of deposit (CDs) through his Antigua-based Stanford International Bank Ltd. (SIBL). *Id.* at 433. He promised investors the proceeds would be placed in low-risk, high-return investments. *Id.* He instead used the proceeds to pay earlier investors the promised returns. *Id.* All told, his scheme bilked investors of $7 billion. *Id.*

### B. The History

Plaintiffs are a Louisiana-based group of SIBL CD holders who lost their investments. (Docs. 128 at p. 12, ¶ 13; 141-1 at p. 6, ¶ 13). SEI is a provider of "trust processing and reporting services." (Doc. 250-2 at p. 72). In 1998, SEI contracted to provide those services—including its Trust 3000 system—to Stanford Trust Company, an entity R. Allen Stanford used to sell SIBL CDs.[2] (Doc. 28-5 at ¶¶ 4–6).

---

[2] The contract is titled "SEI Trust Company Trust Services and Custody Agreement." (Doc. 250-2 at p. 72).

2

The contract describes SEI as an "independent contractor." (Doc. 250-2 at p. 72). It grants Stanford Trust Company (but not SEI) the right to issue "instructions." (*Id.* at pp. 77, 80). It grants Stanford Trust Company (but not SEI) the right to price non-marketable securities, like the SIBL CDs. (*Id.* at p. 89). And it makes Stanford Trust Company "solely responsible for the accuracy and completeness of any data" provided to SEI under the contract. (*Id.* at p. 74).

Plaintiffs bought or renewed SIBL CDs from Stanford Trust Company. (Docs. 128 at ¶ 13; 141-1 at p. 6, ¶ 13). They lost their investments when the Ponzi scheme collapsed. (Doc. 28-5 at ¶¶ 4–21). In 2009, they sued SEI in Louisiana state court, alleging that SEI violated the Louisiana Securities Law. *See* LA. REV. STAT. §§ 51:712(D), 51:714(A), 51:714(B). The state court certified a class of all persons who bought or renewed SIBL CDs in Louisiana between January 1, 2007 and February 13, 2009. (Doc. 25-6).

According to Plaintiffs, SEI contracted with Stanford Trust Company to "provide monthly and quarterly reports" on the value of Stanford Trust Company's SIBL CDs. (Doc. 28-5 at ¶ 9). But the CDs were actually "highly speculative debt instruments," part of a "a massive Ponzi scheme." (*Id.* at ¶¶ 6–7). SEI "played a vital and substantial role" in Stanford Trust Company's sale of the SIBL CDs by "providing the platform and expertise . . . to implement the deceptive scheme." (*Id.* at ¶ 10). Specifically, SEI "fail[ed] to properly report the value" of the SIBL CDs in "monthly and quarterly" reports to Plaintiffs. (*Id.* at ¶¶ 21, 34).

In 2013, Plaintiffs amended their petition to assert direct-action claims under LA. REV. STAT. § 22:1269 against SEI's insurers: Allied World Assurance Company (U.S.) Inc., Continental Casualty Company, Arch Insurance Company, Indian Harbor Insurance Company, Nutmeg Insurance Company, and Certain Underwriters at Lloyd's of London subscribing to policy nos. FD0805144, FD0805145, FD0805146, FD0805149 (collectively, the "Insurer Defendants"). (Doc. 28-5).

The Insurer Defendants removed the case to this Court under the Class Action Fairness Act. *See* 28 U.S.C. §§ 1332(d)(2) & 1453(b). Five months later, the United States Judicial Panel on Multidistrict Litigation transferred Plaintiffs' claims against SEI and the Insurer Defendants to MDL No. 2099, *In re: Stanford Entities Securities Litigation*, before Judge David. C. Godbey of the United States District Court for the Northern District of Texas.[3] (Doc. 94).

In the Northern District of Texas, SEI obtained on-the-pleadings dismissals of Plaintiffs' claims under Sections 712(D) and 714(A) of the Louisiana Securities Law. (Docs. 198 & 199 in N.D. Tex. No. 3:13-CV-3127-N). So the only remaining claim against SEI is a control-person claim under Section 714(B) of the Louisiana Securities Law. *See* LA. REV. STAT. § 51:714(B).

The case remained in the Northern District of Texas for five years. (Docs. 94, 104). It returned to this Court in January 2019, when the JPML entered a conditional remand order. (Doc. 104). At the time of remand, two motions were pending: SEI's

---

[3] That court adopted a modified version of the state court's class-certification order and certified a Rule 23(b)(3) class "of all persons for whom Stanford Trust Company purchased or renewed SIBL CDs in Louisiana between January 1, 2007 and February 13, 2009." (Doc. 201 in N.D. Tex. No. 3:13-CV-3127-N).

4

motion for summary judgment and Plaintiffs' motion for a continuance under Federal Rule of Civil Procedure 56(d). (Docs. 127, 130).[4] The Court considers each in turn.

## C.   The Motion for Summary Judgment

SEI moves for summary judgment on the ground that Plaintiffs cannot prove the control element of their Section 714(B) control-person claim. (Doc. 127). SEI contends that the contract defined its relationship with Stanford Trust Company, and the terms of that contract confirm that it did not control the liability-creating conduct of Stanford Trust Company. (Doc. 128). Plaintiffs disagree. (Docs. 129, 130, 141).

In Plaintiffs' view, summary judgment is premature. (Doc. 129). Plaintiffs assert that "no substantive document production or substantive depositions have occurred . . . other than the 30(b)(6) deposition of SEI[.]" (*Id.*). And Plaintiffs assert that they "are unable to fully present facts essential to [their] opposition" because they "have not been permitted to conduct substantive discovery." (*Id.*).

## D.   The Motion for a Rule 56(d) Continuance

Plaintiffs move for a Rule 56(d) continuance on the ground that they "have not been permitted to conduct substantive discovery." (Doc. 130 at p. 1). In support, they offer the declaration of their lead counsel, Philip Preis. (Doc. 130-1).

In his declaration, Preis tries to "demonstrate why Plaintiffs cannot present facts essential to support [their] opposition" to SEI's summary judgment motion. (*Id.* at ¶ 5). Preis attests that, because of SEI's inadequate discovery responses, Plaintiffs

---

[4] Plaintiffs style the motion a "Motion for Dismissal of Summary Judgment Or In The Alternative, Motion to Obtain a Continuance under Rule 56(d) until Discovery is Commenced and Substantially Completed." One party may not "dismiss" another's summary judgment motion. So the Court treats the motion as a request for a Rule 56(d) continuance.

5

"have not been able to identify persons at SEI and entities owned and controlled by SEI that may be in possession of relevant documents to be searched electronically." (*Id.* at ¶ 25). Preis further attests that Plaintiffs "cannot identify all of the specific types of evidence" they intend to present in opposition to summary judgment because "such evidence is in the exclusive control and/or custody of SEI." (*Id.* at ¶ 29).

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit." *Id.* at 248.

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citation omitted).

The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

## III. DISCUSSION

SEI moves for summary judgment on the ground that Plaintiffs cannot prove the control element of their Section 714(B) control-person claim. (Doc. 127). Plaintiffs rejoin that summary judgment is premature, invoke the Preis Declaration, and request a continuance. (Docs. 129, 130). The Court considers that request first.

### A. The Requested Continuance

The Court may deny summary judgment if Plaintiffs show "by affidavit or declaration that, for specified reasons, [they] cannot present facts essential to justify [their] opposition." FED. R. CIV. P. 56(d). Plaintiffs "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citation omitted). They must instead "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* at 894. Here, they fail to do so.

The Preis Declaration is deficient in several respects. (Doc. 130-1). First, it fails to identify any "specified facts" further discovery may disclose; instead, it vaguely asserts that SEI has "information" that is "essential" to Plaintiffs' opposition. (Doc. 130-1). That will not do. *See Biles*, 714 F.3d at 894.[5] Second, it fails to "set forth a plausible basis" for believing that this unidentified—yet "essential"—information is

---

[5] *Accord Smith v. Regional Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016) (affirming denial of Rule 56(d) motion where plaintiffs "failed to identify sufficiently specific or material evidence to affect [the] summary judgment ruling"); *Canada v. Tex. Mut. Ins. Co.*, 766 F. App'x 74, 81–82 (5th Cir. 2019) (per curiam) (affirming denial of Rule 56(d) relief under similar circumstances).

"susceptible of collection within a reasonable time frame." *Id.* Third, it does not even state that this unidentified information will "influence the outcome" of SEI's summary judgment motion. *Id.* It fails to set forth any basis—let alone a "plausible" one—for believing that discovery is likely to reveal facts creating a genuine dispute as to SEI's ability to control Stanford Trust Company's primary violations of the Louisiana Securities Law. *See Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014) (holding that a Section 714(B) plaintiff must "at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based").

Beyond the deficient declaration, Plaintiffs fail to show that they have diligently pursued discovery. *See Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017). The first time Plaintiffs "sought judicial assistance" in obtaining any relevant documents "was in response to [SEI's] summary judgment motion." *Id.* at 816. That is not diligence. *See id.*

\* \* \*

Plaintiffs have not shown what Rule 56(d) requires. *See Biles*, 714 F.3d at 894. Accordingly, the Court denies the Rule 56(d) continuance request and turns to the merits.

## B.     The Merits

SEI argues that it is entitled to summary judgment because Plaintiffs cannot prove the control element of their Section 714(B) claim. (Doc. 128). SEI argues that Plaintiffs cannot prove that element because a contract defined its relationship with Stanford Trust Company, and that contract shows that it could not control Stanford Trust Company's primary violations of the Louisiana Securities Law. (*Id.*). Plaintiffs disagree. (Doc. 261).

Plaintiffs dedicate most of their brief to the Rule 56(d) argument the Court has rejected. (Doc. 141 at pp. 1–33). Indeed, Plaintiffs spend 33 pages discussing alleged inadequacies in SEI's discovery responses. (*Id.*). In the remaining pages, Plaintiffs direct the Court to five "critical" facts and emphasize that control is a fact question. (*Id.* at pp. 33–49). Before turning to those facts, the Court considers the relevant law.

SEI's motion turns on Section 714(B) of the Louisiana Securities Law. *See* LA. REV. STAT. § 51:714(B). That provision creates liability for a person who "controls" a person liable under Section 714(A) of the Louisiana Securities Law:

> Every person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the person liable under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist. There is contribution as in the case of contract among several persons so liable.

LA. REV. STAT. § 51:714(B). The Louisiana Securities Law defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." LA. REV. STAT. § 51:702(4). Because Louisiana control-person precedent is "thin," the Court "look[s] to federal law for instruction." *Triche*, 775 F.3d at 283.

Applied here, Section 714(B) makes SEI liable for Stanford Trust Company's violations of the Louisiana Securities Law if SEI "directly or indirectly control[led]" Stanford Trust Company. *See Triche*, 775 F.3d at 283. Plaintiffs need not prove that SEI participated in the fraudulent transaction. *See id.* (citing *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981)). They must, however, "show that [SEI] had an ability to control the *specific transaction or activity* upon which the primary violation is based." *Triche*, 775 F.3d at 283 (citation omitted) (emphasis added).

The relevant activities are Stanford Trust Company's sale of fraudulent SIBL CDs and creation of bogus CD values. (Doc. 28-5 at ¶¶ 103–104). SEI points to its contract with Stanford Trust Company as proof that it lacked the ability to control these activities. (Doc. 250-2 at p. 72).

The contract supports SEI's argument. It makes Stanford Trust Company "solely responsible for the accuracy and completeness of any data" provided to SEI. (*Id.* at p. 74). It grants Stanford Trust Company the right to price the SIBL CDs. (*Id.* at p. 89). And it characterizes SEI as an "independent contractor" lacking the right to issue "instructions" to Stanford Trust Company. (*Id.* at p. 72). In sum, it tends to

show that SEI lacked the ability to control Stanford Trust Company's primary violations of the Louisiana Securities Law. (*Id.* at pp. 72–137).

Testimony, too, supports SEI's argument. Al Del Pizzo, President of SEI Private Trust, testified[6] that SEI did not have an ownership interest in Stanford Trust Company, that SEI did not have a representative on Stanford Trust Company's board of directors, that SEI did not, in fact, direct the policies of Stanford Trust Company, and that SEI did not have the "ability" to direct the management or policies of Stanford Trust Company. (Doc. 128-2 at pp. 57–58). He also testified that SEI neither priced nor had custody of the SIBL CDs. (*Id.* at pp. 51–52). All of this testimony tends to show that SEI lacked the ability to control Stanford Trust Company's primary violations of the Louisiana Securities Law.

Through the contract and testimony, SEI has met its initial burden of pointing to the absence of evidence supporting the control element of Plaintiffs' Section 714(B) claim. *See In re La. Crawfish Producers*, 852 F.3d at 462. Accordingly, the burden shifts to Plaintiffs to "demonstrat[e] by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* Plaintiffs fail to do so.

First, Plaintiffs posit that SEI can have control-person liability under Section 714(B) if SEI "enabled" Stanford Trust Company's primary violations. (Doc. 141). Not so. The minimum proof control-person liability requires is proof of an ability to control; proof of "enabling" conduct is insufficient. *See Triche*, 775 F.3d at 283. After

---

[6] Del Pizzo gave the testimony during a class certification hearing in Louisiana state court.

11

all, "control" is a defined term, and "enabling" conduct does not meet the statutory definition. *See* LA. REV. STAT. § 51:702(4).

Nor does but-for causation. *See, e.g., Friedman v. JP Morgan Chase & Co.*, No. 15-CV-5899, 2016 WL 2903273, at *11 (S.D.N.Y. May 18, 2016), *aff'd*, 689 F. App'x 39 (2d Cir. 2017). Yet Plaintiffs declare, without citing to the record, that "[t]he evidence clearly shows" that the Ponzi scheme would not have developed but for SEI's "monthly reporting of the values of the SIB[L] CDs[.]" (Doc. 141 at p. 42). The argument is beside the point; the power to stop a securities-law violation is not the same as the power to direct the conduct constituting the violation. *See Solow v. Heard McElroy & Vestal, L.L.P.*, 44,042 (La. Ct. App. 2d Cir. 4/8/09); 7 So. 3d 1269, 1281–82; *Triche*, 775 F.3d at 285 (recognizing that *Solow*'s interpretation of Section 714(B) is "surely" correct).

Second, Plaintiffs emphasize what they call a "cradle-to-grave relationship" between SEI and Stanford Trust Company. (Doc. 141 at p. 34). But that, too, overlooks the definition and test for control. *See* LA. REV. STAT. § 51:702(4); *Triche*, 775 F.3d at 283. A company is not a Section 714(B) violator just because it has long done business with a Section 714(A) violator. *See id.* Control is key. And here, it simply is not present.

Third, Plaintiffs fault SEI for failing to perform due diligence on the marketing and valuation of the SIBL CDs. (Doc. 141 at p. 34). In Plaintiffs' view, SEI should have known better than to market the CDs at face value. (*Id.* at p. 35). Due diligence, however, is not relevant to the threshold question of control. *See Trans Pac.*

12

*Interactive, Inc. v. U.S. Telemetry Corp.*, 2017 WL 1376592, at *6, 2016-1298 (La. Ct. App. 1st Cir. 4/12/17), *reh'g denied* (May 1, 2017), *writ denied*, 2017-0914 (La. 9/29/17), 227 So. 3d 294. It is only after a Section 714(B) defendant is adjudged a control person that a due-diligence analysis comes into play. *See* LA. REV. STAT. § 51:714(B). Accordingly, this argument also misses the mark.

\* \* \*

Plaintiffs have not "demonstrate[ed] by competent summary judgment proof that there is an issue of material fact warranting trial." *In re La. Crawfish Producers*, 852 F.3d at 462. Specifically, Plaintiffs have not identified any evidence that creates a genuine dispute as to SEI's ability to control Stanford Trust Company's primary violations of the Louisiana Securities Law. Without evidence of control, Plaintiffs' Section 714(B) control-person claim cannot stand. The Court therefore grants SEI's motion and dismisses Plaintiffs' Section 714(B) control-person claim with prejudice.

### C.   The Direct-Action Claims

Plaintiffs have sued the Insurer Defendants under Louisiana's Direct Action Statute, LA. REV. STAT. § 22:1269. (Doc. 28-5 at ¶¶ 142–146). That provision "'does not create an independent cause of action against the insurer; it merely grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured.'" *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, ___ F.3d ___, 2019 WL 2496901, at *12 (5th Cir. June 17, 2019) (quoting *Soileau v. Smith True Value & Rental*, 144 So. 3d 771, 780 (La. 2013)).

The Court has dismissed all "substantive cause[s] of action" against SEI, the insured in this case. *Soileau*, 144 So. 3d at 780. So Plaintiffs have no claims against the Insurer Defendants under the Direct Action Statute. *See Marsh Eng'g Inc. v. Parker*, 2004-0509 (La. App. 3d Cir. 9/29/04); 883 So. 2d 1119, 1127 ("When the injured party's substantive cause of action against the original tort feasor [sic] is extinguished, the procedural right of direct action against the insurer, which is purely remedial and ancillary to the cause, must fall by operation of law."). But the Insurer Defendants have not moved for summary judgment, and the Court cannot grant summary judgment in their favor without affording Plaintiffs "notice and a reasonable time to respond." FED. R. CIV. P. 56(f).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion for Dismissal of Summary Judgment or a Continuance (Doc. 130)** is **DENIED**.

**IT IS FURTHER ORDERED** that SEI Investments Company and SEI Private Trust Company's **Motion for Summary Judgment (Doc. 127)** is **GRANTED**. Plaintiffs' remaining claims against SEI Investment Company and SEI Private Trust Company are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs shall show cause, in writing and within 10 days, why the Court should not grant summary judgment in favor of the Insurer Defendants and thereafter enter final judgment in accordance with Federal Rule of Civil Procedure 58. If Plaintiffs fail to timely respond, the Court will, on its own motion, enter summary judgment in the Insurer Defendants' favor.

Baton Rouge, Louisiana, this 9th day of July, 2019.

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

15